CONTACT PRODUCTS, INC., Appellant,

v.

DIXICO INCORPORATED, et al., Appellee.

No. 05–83–00625–CV.

Court of Appeals of Texas, Dallas.

May 22, 1984.

Rehearing Denied June 21, 1984.

Durwood D. Crawford, Dallas, for appellant.

Mark S. Werbner, Dallas, for appellee.

Before CARVER, ALLEN and GUILLOT, JJ.

GUILLOT, Justice.

This is an appeal by Contact Products, Inc. (Contact) from a judgment in favor of Dixico Incorporated, et al. (Dixico). For the reasons below, we affirm the judgment.

Contact brought suit to reform a business purchase agreement on the basis of fraud or, alternatively, mutual mistake. The disputed portion of the agreement pro-

vided that Dixico, the seller, would transfer assets equal to "the present value of the accrued benefits" of the employees of Dixico from its pension plan to a new plan to be created by Contact, the buyer. The contract did not include the amount of money to be transferred. An actuarial evaluation of the pension plan was prepared following the closing of the sale, and Dixico notified Contact that $157,273.00 (the present value of the accrued benefits) would be transferred to Contact. Contact claimed that the amount equal to the value of the funds in Dixico's plan (a substantially greater sum) was to be transferred to Contact. Contact brought suit to reform the agreement to that effect, and Dixico filed a general denial and counter-claim for declaratory judgment that the agreement obligated Dixico to transfer $157,273.00 and no more.

■ In its first point of error, Contact contends that the trial court erred in excluding evidence that was properly admissible and necessary to the jury's understanding of Contact's contentions and that this action caused the rendition of an improper judgment. Contact argues that the court should have admitted two letters (one written by McNett, the president of Contact, and another written by Falconer, the attorney who represented Contact in the negotiations for the purchase of the business). In essence, the letters stated that the parties' understanding was that the amount of *funds* in the plan were to be transferred to Contact. Contact contends that these letters were necessary to shed light on the situation surrounding the negotiations, if a mutual mistake did exist, and that the correspondence was crucial in determining whether the written language embodied the true agreement of the parties. Contact further argues that the lack of response, i.e., silence, by Dixico's representatives to the letters should have been admissible as admissions by them.

Dixico responds that these letters were nothing more than statements of Contact's position in the developing dispute and that they were inadmissible because they were hearsay and self-serving declarations by

Contact. *See Barnhouse Motors, Inc. v. Godfrey,* 577 S.W.2d 378, 383 (Tex.Civ.App. —El Paso 1979, no writ); *State ex rel. Texas City Independent School District v. La Marque Independent School District,* 258 S.W.2d 384, 390 (Tex.Civ.App.—Galveston 1953, writ ref'd n.r.e.). We agree with Dixico. Furthermore, McNett and Falconer were available at trial and did testify about the matters contained in the letter. Their live testimony was certainly more reliable (since subject to cross-examination) than any prior written documents. Moreover, since they testified to the content of the documents, the letters were cumulative of the oral testimony. We overrule Contact's first point of error.

■ In its second and third points of error, Contact contends that the trial court erred in not awarding judgment for Contact because the jury's answers were contrary to the great weight and preponderance of the evidence, and in not entering judgment for Contact because the evidence showed as a matter of law that a mutual mistake occurred entitling Contact to judgment. Contact bases its argument in part on an alleged statement made by Dixico representing that Contact would be "no better off or no worse off" than Dixico was as a result of the agreement. Thus, Contact contends that it was apparent that the parties placed an interpretation on the language of "present value of the accrued benefits" that was different from the definition of the actuaries. There is ample evidence that McNett and Falconer were sophisticated in business dealings, and were not prevented from making their own examination and determining the meaning of "present value of the accrued benefits." *See Bifano v. Econo Builders, Inc.,* 401 S.W.2d 670, 675–676 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). Here, the testimony was clear that Dixico was not mistaken as to the meaning of the term; thus, there was no mutual mistake as a matter of law. *Bifano,* 401 S.W.2d at 675. Moreover, the jury was instructed in this case that there could not be a mutual mistake if one party was negligent in learning the meaning of a

term. There is sufficient evidence to show that Contact understood the term and, if it did not understand it, the mistake was due to its own negligence. Thus the jury's answers were not contrary to the great weight and preponderance of the evidence. We overrule Contact's second and third points of error.

 In its fourth and fifth points of error, Contact contends that the trial court erred in awarding attorney's fees to Dixico on its counter-claim for declaratory judgment because the claim was unnecessary and sought the same relief as Dixico's general denial and that the court erred in awarding the attorney's fees because they were not proper under the Declaratory Judgment Act. Contact argues that the proceeding in the trial court was not under the Act but rather an attempt to reform a written agreement. Contact further contends that the filing of a declaratory judgment was a disguised effort to obtain attorney's fees not otherwise available by statute or contract. Dixico replies that Contact never specially excepted to its pleadings for declaratory judgment. Further, the Declaratory Judgment Act provides for use of the Act to determine the construction of a written instrument. TEX.REV. CIV.STAT.ANN. art. 2524–1, § 2 (Vernon 1965). The recently amended Declaratory Judgment Act specifically provides that the court can allow attorney's fees in that kind of suit. TEX.REV.CIV.STAT.ANN. art. 2524–1, § 10 (Vernon Supp.1984). Dixico had a right to request the trial court to declare the extent of the obligation of Dixico under the contract of the parties and, in turn, to request attorney's fees incurred in connection with that action. We note that the statute provides that the trial court "may make such award of . . . reasonable and necessary attorney's fees as may seem equitable and just." TEX.REV.CIV.STAT. ANN. art. 2524–1, § 10. We interpret this provision to give the trial court discretion in making this award. Therefore, we hold that an abuse of discretion standard should be invoked upon review of the award. We further hold that there has been no abuse

of discretion in the instant case. We overrule Contact's last two points.

Costs taxed against Contact.

Affirm.