Lewis L. O'HERN and Cynthia J. O'Hern, Appellants,

v.

Bonnie HOGARD d/b/a Century 21, Kay Perry, et al., Appellees.

No. A14–92–00283–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 12, 1992.

George R. Pain, Houston, for appellants.

C.J. Kling, Jack W. Dillard, Bryan, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is an appeal from a summary judgment. The appellants, Lewis and Cynthia O'Hern, purchased a home from Bradley and Debra Robinson. Bonnie Hogard, a real estate broker of Century 21, was the Robinsons' listing agent. Kay Perry represented the Robinsons as their salesperson.

1. Appellants non-suited Phil Callahan.

The O'Herns hired Phil Callahan as their personal real estate agent. Within three months after purchasing the home, the O'Herns noticed substantial defects in the house, apparently caused by foundation problems. They sued the Robinsons, Bonnie Hogard, d/b/a Century 21, Kay Perry and Phil Callahan[1] alleging violations of the Deceptive Trade Practices Act.[2]

The Robinsons filed their motion for summary judgment which was initially granted on August 23, 1991. Bonnie Hogard, d/b/a Century 21, and Kay Perry filed a motion for summary judgment which the trial court granted on January 27, 1992. The trial judge signed a final summary judgment granting both motions on January 27, 1992. We reverse.

On appeal, the O'Herns argue that the trial court erred by granting summary judgments on the DTPA claims. To prevail at trial, the plaintiffs must prove:

1. A failure to disclose information concerning goods or services;
2. Which was known at the time of the transaction;
3. Which was intended to induce them into a transaction; and
4. That they would not have entered into the transaction if the information had been disclosed.

Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon 1987).

None of the appellees produced summary judgment evidence disputing the first three elements listed above. They based their motions on the grounds that their failure to disclose was not a producing cause of the O'Herns' decision to buy the house. To obtain a summary judgment, the moving party must prove there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–549 (Tex.1985). The nonmoving party does not need to put on any evidence until the movant meets this burden. *Gibbs v. General Motors*

2. They also alleged "negligence, misrepresentations, failure to disclose, and unconscionable course of action under the common law."

*Corp.,* 450 S.W.2d 827, 829 (Tex.1970). In reviewing a summary judgment, we accept all evidence offered by the non-moving party as true. *Nixon* at 548–549. All reasonable inferences are indulged, and all doubts resolved, in the non-movant's favor. *Id.*

■ Neither of the summary judgment motions eliminated all genuine issues of fact. Both motions relied on Lewis O'Hern's deposition. His testimony makes clear that he did not rely upon any of the appellees' advice, expertise or judgment in purchasing the home. O'Hern stated that he placed very heavy reliance upon the advice, expertise and judgment of Phil Callahan. He also stated he planned on having the property inspected regardless of what the realtors told him. The evidence shows that the O'Herns had the right to obtain an inspection of the property before closing. The O'Herns selected Brazos Realty Inspection, Inc. to inspect the foundation. The report obtained from Brazos Realty raised the O'herns' comfort level about the condition of the house. O'Hern admitted he was aware of some defects in the house before closing. He discussed soil conditions and cracks in the foundation with Callahan prior to closing. This evidence does not entitle the appellees to judgment as a matter of law.

There was no summary judgment evidence showing that the O'Herns would not have purchased the house if the appellees had disclosed the structural defects. In fact, the evidence showed that the O'Herns were wary first time home buyers. It can reasonably be inferred that a disclosure of the prior foundation settling would have caused them to abandon the deal. Of course, a jury might conclude from the evidence that the appellees' failure to disclose was not a producing cause of the O'Herns' damages. However, the evidence does not entitle the appellees to judgment as a matter of law.

■ The Robinsons also relied on the affidavit of Bradley Robinson for their summary judgment motion. The affidavit states that the Mr. Robinson never met the O'Herns prior to closing, and made no oral or written representations to them. It also shows that the Robinsons provided Kay Perry with information about the settling foundation. Kay Perry had sent the Robinsons a property condition disclosure statement to complete. The Robinsons indicated on the form that the house had some minor settling problems the previous summer. They both signed the statement and returned it to Kay Perry. Although the property disclosure statement contained a place for the purchasers' signatures, Perry admits she never presented the statement to the O'Herns. Mr. Robinson states that they disclosed "all necessary information" to Kay Perry. However, the O'Herns have complained of much more than the "minor settling" mentioned in the disclosure statement. Mr. Robinson's conclusory statement did not disprove a failure to disclose as a matter of law.

■ Appellees rely on *Dubow v. Dragon,* 746 S.W.2d 857 (Tex.App.—Dallas 1988, no writ) for the proposition that the O'Herns' actions were a "new and independent basis" which "intervened and superseded" the appellees' failure to disclose, and "became the sole and efficient cause of their damages." Our supreme court has stated that a primary purpose of the enactment of the Deceptive Trade Practices Act was to provide consumers a cause of action without the numerous common law defenses. *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980) (finding that consumers did not have to prove intent to defraud under § 17.46(b)(7)). While the appellees may ultimately prove their actions were not a producing cause of the O'Herns' damages, reliance on the common law defensive theory of new and independent cause is misplaced.

We recognize that two other courts of appeals have considered new and independent cause in DTPA cases. *Dubow v. Dragon,* 746 S.W.2d 857 (Tex.App.—Dallas 1988, no writ); *Riojas v. Lone Star Gas Co., etc.,* 637 S.W.2d 956 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). In *Dubow,* the prospective buyers of a home hired an expert to inspect the house. The expert's report revealed differential movement in the foundation, which affected the entire

house, and several roof leaks. The buyers considered terminating their earnest money contract. Instead, they hired a foundation specialist to conduct another inspection of the foundation. The specialist confirmed the results of the first inspection, and noted additional problems caused by the foundation movement. The buyers also had an architect and a contractor look at the house before closing. They obtained estimates for the cost of repairing the existing defects which were about $4,000.

The buyers were also concerned about future problems. They refused to purchase the house unless the sellers agreed to lower the price by $17,500. The sellers agreed to the reduction in price. However, in exchange for lowering the price, the following provision was added to the contract:

> After careful inspection of the house, and with professional opinions, [we] feel that the house will need extensive ongoing maintenance because of the site positioning, foundation and drainage. See attached inspection report. We will take the home as is, WITH ALL CONTINGENCIES REMOVED.[3]

*Dubow* at 859 (emphasis in original). After moving into the house, the buyers claimed they discovered additional problems.

They sued the sellers under the Deceptive Trade Practices Act for failure to disclose the foundation problems in the family room and roof leaks. The sellers filed a motion for summary judgment asserting that any failure to disclose was not a producing cause of the buyers' damages. The trial court granted the motion. On appeal, the court held that the buyers' careful inspection of the house "constituted a new and independent basis for the purchase which intervened and superseded" any wrongful acts of the sellers. *Id.* at 860. The court of appeals decision makes clear that it not only considered the expert opinions relied upon by the buyers, but also the fact that the contract price was renegotiated. *Id.*

The *Dubow* opinion cites *Riojas v. Lone Star Gas Co., Etc.,* 637 S.W.2d 956 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). The *Riojas* opinion also refers to new and independent cause in a DTPA case. However, *Riojas* involved a claim for personal injury damages under common law tort principles, and also for DTPA violations. In *Riojas,* the defendant gas company terminated the plaintiffs' gas service after assuring them they would not. To keep warm, the plaintiffs carried a bucket of burning charcoal inside their house. They both suffered carbon monoxide poisoning from inhaling the fumes. The trial court granted a summary judgment in favor of the gas company after finding no causal connection between the defendant's acts and the plaintiffs' injuries. On appeal, the court assumed that the defendant's actions were negligent and in violation of the DTPA. Focusing on the causation element, the court recognized that the act of bringing the bucket into the house proximately caused the plaintiffs' injuries. *Id.* at 959. The court held that the plaintiffs' act broke the causal sequence of events and became the sole cause of the plaintiffs' injuries. *Id.* at 960.

■ The *Riojas* decision is clearly distinguishable from *Dubow* and the case at hand. Neither of the latter two cases involved personal injury damages based on negligence claims. We hold that the appropriate inquiry is whether the sellers' failure to disclose was a producing cause of the purchasers' damages. Since the appellees failed to prove their failure to disclose was not a producing cause of the O'Herns' damages, the trial court erred by granting the summary judgments. We reverse and remand the case for trial on the merits.

---

3. The trial court did not rule upon whether this contract provision violates § 17.46 of the Deceptive Trade Practices Act.